[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10695
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 29, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:07-cv-01156-TJC-JBT

JAMES ALEXANDER LOGAN,

Plaintiff - Appellant,

versus

ANDREW P. SMITH,
Captain, sued in his/her individual capacity,
MICHAEL RILEY,
Sergeant, sued in his/her individual capacity,
J. L. SILCOX,
Officer, sued in his/her individual capacity,
BRIAN HUMPHERY,
Officer, sued in his/her Individual capacity,
W. GODWIN,
Sergeant, sued in his/her individual capacity, et al.,

Defendants - Appellees.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 29, 2011)

Before CARNES, WILSON and FAY, Circuit Judges.

PER CURIAM:

James Logan, a Florida state prison inmate proceeding *pro se*, appeals the district court's grant of summary judgment in favor of several employees of the Florida state prison system. Specifically, he alleges that several prison guards violated his Eighth Amendment rights by using excessive force in extracting him from his cell. Furthermore, he alleges that members of the medical staff failed to give him a thorough examination and correctly document his injuries. The district court concluded that the defendants' affidavits and video evidence refuted Logan's claims.[1] Accordingly, it determined there was no genuine issue of material fact and granted the defendants' motion for summary judgment. Logan appeals. After review of the record and the parties' briefs, we conclude that the district court erred in granting summary judgment.

I.

We review a district court's grant of summary judgment *de novo* and apply the same legal standards that governed its analysis. *Penley v. Eslinger*, 605 F.3d

---

[1] The defendants submitted two different types of video evidence. The first is footage from nine ordinary surveillance cameras in operation throughout the facility ("surveillance videos"). Two of these cameras are equipped with sound capability, however the audio and video is apparently recorded separately. The second type of video evidence comes from a hand-held camera ("hand-held video"). It appears prison personnel transported and operated this camera, recording activity during portions of the time in question.

843, 848 (11th Cir. 2010).

## A.

Summary judgment is proper if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The district court must view the facts, and make any reasonable inferences that may be drawn from those facts, in the light most favorable to the non-moving party. *Penley*, 605 F.3d at 848. The inferences, however, must be supported by the record, and a genuine dispute of material fact requires more than "some metaphysical doubt as to the material facts." *Id*. Furthermore, a dispute of fact will preclude summary judgment only "if the dispute might affect the outcome of the suit under the governing law." *Id*. (internal quotation marks omitted). Thus, a court can deny summary judgment only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) (quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007)). In the

3

context of cases involving video evidence, this Court will accept the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts. *See id.* But, even where the entire series of events is recorded, video evidence is not obviously contradictory if it fails to convey spoken words or tone, or fails to provide an unobstructed view of the events. *See id.* In *Pourmoghani-Esfahani*, this Court declined to rely on video evidence to discredit the plaintiff's version of events entirely, because the video lacked sound and was periodically obstructed. *Id.* at 1315, 1316 n.2.

### B.

The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline and not maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S. Ct. 1078 (1986) (alteration omitted)). Several factors are relevant to this determination, including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity

4

of a forceful response." *Id*. (internal quotation marks omitted). A court may draw inferences from consideration of such factors regarding whether the use of force could plausibly have been thought necessary, or whether it instead demonstrated such a wanton disregard for the unjustified infliction of harm that it is the equivalent of knowingly and willingly inflicting such harm. *See id*. at 1300–01.

Although the extent of injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied, it is not solely determinative of an Eighth Amendment claim. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (per curiam). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id* at 1178–79. Instead, the focus of the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted. *Id*.

Finally, a defendant need not participate in the use of excessive force against a prisoner to be held liable under § 1983 for cruel and unusual punishment. *Skrtich*, 280 F.3d at 1301. A defendant who is present at the scene and fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable. *Id*.

II.

After thorough review of the briefs, videos, and other record evidence, we conclude that the district court erred in granting defendants' motion for summary judgment. While the summary judgment motion presented a close call, the record evidence does not flatly contradict Logan's allegations and, therefore, his version of the events cannot be discounted—nor the defendants' version credited—at this point in the litigation.

The district court, in part, relied on the video evidence in concluding that summary judgment was appropriate. But we are unconvinced that the videos would preclude a reasonable jury from concluding that Logan suffered attacks at two different times. First, and most importantly, *no* video evidence exists that depicts the two periods during which Logan alleges that he was beaten. *See Pourmoghani-Esfahani*, 625 F.3d at 1315. The first instance, he claims, occurred after the extraction team entered his cell. It is uncontroverted that no video exists of the occurrences inside of the cell, even though such footage would normally have been taken.[2] The second instance of excessive force allegedly occurred when the extraction team placed Logan in the medical clinic. The hand-held video does

---

[2] During Logan's extraction, the hand-held video recorders ordinarily used were otherwise occupied. But the surveillance video proves that the encounter lasted approximately two minutes.

not begin until Logan is already lying on a stretcher in the clinic. Sometime

between the end of the surveillance videos and the beginning of the hand-held

video, Logan was taken into the clinic, placed on a stretcher, and had his mouth

covered with a "spit guard" that obstructed the majority of his face. Accordingly,

no video provides evidence regarding the time of the alleged altercations.

Furthermore, the videos' value in proving the nature of Logan's injuries is

quite limited. Both videos are low resolution and provide limited, if any, footage

that would be useful in determining whether injuries existed. The hand-held video

is sufficient to demonstrate that Logan's face is not covered in blood or

significantly disfigured, but beyond that, it cannot be described as dispositive in

relation to the injuries that Logan alleges. *Wilkins*, 130 S. Ct. at 1178–79

(concluding that a gratuitous beating, even without serious injuries, still violates

the Eighth Amendment). Therefore, we conclude that the videos are insufficient

to eliminate the possibility that the defendants applied sufficient force to violate

the Eighth Amendment.[3]

The district court also relied on medical documents the defendants

introduced into the record. This presents a much more difficult issue, but we must

---

[3] Also, because we conclude that the videos do not rule out the possibility of the use of excessive force, we cannot decide that they extinguish the possibility that the defendants accused of failing to intervene are entitled to summary judgment.

keep in mind that the focus of the Eighth Amendment inquiry is on the nature of the force applied, rather than the extent of injury inflicted. *Id*. at 1178–79. The State submitted a "Report of Force Used" along with its motion for summary judgment. The report contained a copy of a medical record that defendant Dr. Selyutin completed. It indicated that he identified no obvious injuries. Dr. Selyutin also submitted an affidavit that averred the same, specifically stating that "I briefly examined [Logan]" and "saw nothing medically wrong with [him]." The video reveals that the "examination" took place from more than five feet away from Logan's face and lasted a matter of seconds. Dr. Selyutin walked into the room, looked at Logan, asked why Logan was there, immediately declared him "normal," and left the room without coming closer to Logan than the foot of the bed. Because of the cursory nature of this examination, we decline to conclude that Dr. Selyutin conducted the kind of medical examination and produced the type of medical records that would definitively demonstrate that Logan suffered no injuries.

Defendant nurse T.M. Parrish also completed an examination and paperwork. The video demonstrates that Parrish did lift Logan's spit guard—contrary to Logan's allegation—and conducted an examination that took approximately one minute. The video reveals Parrish focused on Logan's head

and face, but did not evaluate his shoulder, ribs, or back—other areas Logan alleges were injured. Accordingly, with no medical evaluation, we cannot conclude that Logan suffered no injuries to those parts of his body.

Finally, other evidence suggests some injuries might have been present. First, another nurse noted that Logan had a possible hematoma the day after the incident, however a later medical examination discounted that possibility. Second, a prison doctor prescribed pain medication for Logan's shoulder approximately three weeks after the use of force at issue. Third, Logan's own conduct, captured on video, suggests that he suffered injury. He can be heard to repeatedly complain about injuries to his face and head.

Having decided that the video and medical evidence does not flatly contradict Logan's allegations, we are simply left with different stories told by different litigants. Logan presented his own affidavit and the sworn statements of two other individuals. All three allege that prison guards used excessive force against Logan. Conversely, each of the defendants submitted an affidavit countering that version of events. While it may be clear to the district court that the evidence weighed in favor of defendants, the evaluation of evidence is a matter for juries. Accordingly, plenary summary judgment—based on the conclusion that no reasonable jury could conclude that some defendants used excessive

9

force—was inappropriate.

III.

For the foregoing reasons, we vacate the district court's grant of summary judgment, and we remand for further proceedings.

**VACATED AND REMANDED.**