[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13918
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-02681-TWT

EKATERINA SEVOSTIYANOVA,

                                                      Plaintiff-Appellant,

                              versus

COBB COUNTY OF GEORGIA,
OFFICER A. C. AYERS,
JOHN DOE I,
RICHARD CUNNINGHAM,
JOHN DOE III, et al,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 11, 2012)

Before EDMONDSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

In this § 1983 action, *pro se* plaintiff-appellant Ekaterina Sevostiyanova appeals the district court's grant of summary judgment in favor of defendants Officer Christopher Allen Ayers, Deputy Sheriff David Clark Hilsman, and Deputy Sheriff Richard Cunningham (collectively "the individual defendants"), and Cobb County, Georgia, as well as the denial of her cross-motion for summary judgment. After a thorough review of the record, we affirm in part and vacate and remand in part.

I. Background

On September 16, 2009, Sevostiyanova filed a § 1983 action against Cobb County and the individual defendants, alleging that the defendants violated her constitutional rights when she was arrested for driving without insurance and hit and run.

According to Sevostiyanova, she was pulling out of a parking lot when she slightly touched some loose lumber protruding from a truck also parked in the lot. There was no damage to the truck, the lumber, or the rental car she was driving. Nevertheless, about two months later, Cobb County police contacted her about a hit-and-run accident; she denied any involvement. She further alleged that a few days later, Cobb County officers broke into her home, attacked her, pointed a gun

in her face, and arrested her for having no insurance. Based on these facts, Sevostiyanova alleged constitutional violations for the use of excessive force, unlawful seizure, malicious prosecution, and violations of due process, along with state-law claims not at issue in this appeal.

Both sides filed motions for summary judgment. The district court granted summary judgment in favor of Cobb County and the individual defendants and denied Sevostiyanova's cross-motion for summary judgment. The district court found there was probable cause, or in the alternative arguable probable cause for Sevostiyanova's arrest, and that the amount of force used during the arrest was *de minimus*. The court also found that the claims against Cobb County failed because Sevostiyanova did not offer adequate evidence of the county's training policies.

II. Sevostiyanova's Appeal[1]

We review the district court's summary judgment rulings *de novo*, including its conclusions regarding qualified immunity. *See Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010); *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003). Summary judgment is appropriate if the movant demonstrates there is no genuine dispute as to any material fact, and that it is entitled to

---

[1] Sevostiyanova does not challenge the dismissal of her state-law claims or the claims against John Doe III. Therefore, she has abandoned these claims and we do not address them. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

3

judgment as a matter of law. Fed.R.Civ.P. 56(a). We must accept the non-movant's version of the facts, and draw all justifiable inferences in that party's favor. *Pourmoghani-Esfahani*, 625 F.3d at 1315.

### A. The Individual Defendants

Qualified immunity completely protects government officials sued in their individual capacities so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Hoyt v. Cooks*, 672 F.3d 972, 977 (11th Cir.), *petition for cert. filed* (Apr. 27, 2012) (No. 11-1363). To be entitled to qualified immunity, an official must first establish that he was performing discretionary duties. *See id*. If so, he is entitled to qualified immunity unless the plaintiff shows that there was a violation of the constitution and that the illegality of the defendant-official's conduct was clearly established at the time of the incident. *See Hoyt*, 672 F.3d at 977.

A police officer acts within his discretionary authority when he effects an arrest. *See Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003). Thus, the only question before us is whether the laws were clearly established at the time of the arrest. Sevostiyanova alleged that the defendants violated her constitutional rights by: maliciously prosecuting her, falsely imprisoning her, illegally arresting her in her home, and using excessive force during the arrest. We address each issue in

4

turn.

### 1. Malicious Prosecution

To prove a § 1983 malicious prosecution claim, a plaintiff must show the following: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 881-82.

Ayers stated in his deposition that he investigated the alleged hit and run, found that Sevostiyanova had rented the car she was driving at the time of the accident, and inquired about her insurance coverage. Because the rental agreement indicated that Sevostiyanova would maintain her own insurance coverage, Ayers called GEICO, the insurer listed on the agreement. The GEICO representative initially stated that Sevostiyanova had coverage, but then corrected himself and stated that she was not covered on the date of the accident. Ayers included this information in an arrest warrant application. Based on the affidavit, a magistrate judge issued a warrant for the hit and run and for driving without proof of insurance.[2] The state court later *nolle prossed* the insurance-related

---

[2] We note that, although Sevostiyanova was convicted of various charges related to the hit-and-run incidents, she was not convicted of the insurance-related charges.

charges when it confirmed that Sevostiyanova in fact had insurance at the time of the accident.

Sevostiyanova contends that Ayers called GEICO using an alias, learned she had insurance, and lied on the warrant application by informing the magistrate judge that she did not have insurance. In support of her allegations, she submitted a declaration from a GEICO representative that he informed the officer who called that she had insurance. She also submitted her own statement.

The district court did not address Sevostiyanova's malicious prosecution claim, and the factual findings the district court made do not enable appellate review on this issue. Although we may affirm on any ground supported in the record, we do not make factual findings in the first instance.

Sevostiyanova indicates in her appellate brief that she does not challenge the validity of the warrant. But in light of Sevostiyanova's *pro se* status, we conclude that her failure to challenge the validity of the arrest warrant does not invalidate her malicious prosecution claim. Sevostiyanova specifically alleged and provided evidence that Ayers proffered false information of her insured status to obtain the warrant; thus, she has sufficiently preserved her malicious prosecution claim. Accordingly, we vacate and remand on this issue.

2. False Imprisonment

6

A § 1983 claim for false imprisonment requires a showing of the common law elements of false imprisonment, as well as a Fourteenth Amendment due process violation. *Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009). At common law, false imprisonment required an intent to confine, an act resulting in confinement, and the victim's awareness of the confinement. *Id.* A due process violation ensues from the continued detention of a person after it was, or should have been, known that the detainee was entitled to release. *See id.*

Georgia law enforcement officers may effectuate an arrest under a warrant regardless of whether the offenses were committed in the presence of law enforcement. *See* O.C.G.A. § 17-4-20(a). They also may, but are not required to, arrest a person by citation for a traffic offense. *Id.* § 17-4-23(a); *Edwards v. State*, 480 S.E.2d 246, 249 (Ga. Ct. App. 1997).

Even though we conclude that Sevostiyanova may challenge the arrest warrant for purposes of her malicious prosecution claim, allowing her to do so does not change our analysis of her other claims.[3] Here, Hilsman and Cunningham arrested Sevostiyanova for hit and run, as permitted by statute, pursuant to a

---

[3] Moreover, even if the district court were to conclude on remand that Ayers lied in the warrant application, this would only affect the insurance-related charges. The hit-and-run charges were supported by probable cause and the officers were entitled to qualified immunity with respect to the arrest. Additionally, because Sevostiyanova's attempts to get her conviction for hit and run set aside have been unsuccessful, any claims challenging the validity of the arrest would be barred by *Heck v. Humphrey*, 512 U.S. 77 (1994).

7

facially valid warrant issued by a magistrate judge. *See Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012) ("In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination because it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.") (citation and internal quotation marks omitted)). No evidence suggests that they continued to detain Sevostiyanova after they should have known she was entitled to be released. Thus, there is no merit to her claims of false imprisonment.

### 3. In-Home Arrest

For Fourth Amendment purposes, an arrest warrant founded upon probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within. *Payton v. New York*, 445 U.S. 573, 603 (1980). For law enforcement officials to enter a residence in order to execute an arrest warrant for the resident, the facts and circumstances within the officers' knowledge, when viewed in totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is there at the time of entry. *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995). Officers may assume a person is at

home during certain times of the day. *United States v. Bervaldi*, 226 F.3d 126, 1267 (11th Cir. 2000).

Here, the district court properly granted summary judgment to the defendants on Sevostiyanova's claims regarding her in-home arrest. The facially valid arrest warrant gave Hilsman and Cunningham limited authority to enter Sevostiyanova's condominium, and they had reason to believe that she was inside her condominium when they entered. The officers arrived at Sevostiyanova's house early in the morning, a time when, absent other evidence, the officers would expect Sevostiyanova to be home, and they observed someone in the condominium matching Sevostiyanova's description. Under these facts, Sevostiyanova has not shown that her arrest violated her constitutional rights.

### 4. Excessive Force

A § 1983 claim that an officer used excessive force during the course of an arrest falls under the Fourth Amendment proscription against unreasonable seizures. *Graham v. Connor*, 490 U.S. 386, 393-95 (1989). The right to make an arrest carries with it the right to use some degree of physical force or threat thereof, and the typical arrest involves some force. *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002). *De minimus* force does not constitute excessive force. *Nolin v. Isbell*, 207 F.3d 1253, 1255-58 (11th Cir. 2000).

In determining whether an officer used excessive force during an arrest, we ask whether a reasonable officer would believe that this level of force was necessary in the situation at hand. *Lee*, 284 F.3d at 1197. This is an objective inquiry that excludes the officer's intentions. *Id*. at 1198 n.7. We must evaluate a number of factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id*. at 1197-98. In determining whether an officer's use of force was objectively reasonable so as to qualify him for qualified immunity, we also consider the need for the application of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and whether the force was applied in good faith or maliciously and sadistically. *Slicker v. Jackson*, 215 F.3d 1225, 1232-33 (11th Cir. 2000). Ordinary, reasonable force does not become excessive where it aggravates, however severely, a pre-existing condition the extent of which was unknown to the officer at the time. *Rodriguez v. Farrell*, 280 F.3d 1341, 1352-53 (11th Cir. 2002).

Here, Sevostiyanova failed to provide sufficient evidence tending to show that Hilsman and Cunningham used any more than *de minimus* force. Both officers testified that they take whatever precautions necessary when they arrest

10

someone because they often do not know how many people are in a residence or if any of the occupants are armed. In this case, when the officers knocked on Sevostiyanova's door, she did not answer, but the officers saw someone in the apartment run and hide. Thus, the offices entered the apartment and searched for Sevostiyanova with their weapons drawn. Once they located her in the bathroom closet, they holstered their firearms after they saw her hands and determined that she did not have access to a weapon. Because Sevostiyanova refused to comply with the officers, they had to forcibly pull her arms behind her and place her up against the wall. This *de minimus* use of force does not violate the Fourth Amendment, and the officers were entitled to summary judgment on this claim.

B.      Cobb County

Municipalities can be held liable under § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). A plaintiff, however, may not hold a county liable under the theory of *respondeat superior*, and the fact that the plaintiff suffered a deprivation of federal rights at the hands of a municipal employee is insufficient to established a municipality's liability. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Rather, the plaintiff must prove that: (1) her constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and

11

(3) the policy or custom at issue caused the constitutional violation. *Id.* In order to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice, and random acts or isolated incidents are insufficient. *McDowell*, 392 F.3d at 1290.

The district court properly granted the defendants summary judgment on Sevostiyanova's claim against Cobb County because she did not present any evidence that Cobb County policies or customs caused constitutional violations.

III. Conclusion

After review, we conclude that the district court properly granted summary judgment in favor of the individual defendants and Cobb County on Sevostiyanova's claims of unlawful arrest, excessive force, and failure to train. Accordingly, we affirm the district court on these issues. We vacate and remand, however, on Sevostiyanova's malicious prosecution claim for further proceedings consistent with this opinion.

**AFFIRMED in part, VACATED and REMANDED in part.**