[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11848
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cv-00011-AKK

CALLIE HAWKINS,

Plaintiff-Appellee,

versus

AMANDA CARMEAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 20, 2014)

Before HULL, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Callie Hawkins sued Amanda Carmean and others[1] under 42 U.S.C. § 1983 and Alabama law. As relevant on appeal, Hawkins claimed that Carmean, a police officer, used excessive force against her during a traffic stop and subsequent arrest, thereby violating Hawkins's rights under the Fourth Amendment and committing an assault and battery and use of excessive force under state law. Carmean moved for summary judgment, arguing that she committed no constitutional violation, was entitled to qualified immunity under federal law, and was entitled to state-agent immunity under state law. The district court denied Carmean's motion as to the relevant claims. Carmean appeals. For the following reasons, we affirm.

I.

"At this juncture, we outline the [plaintiff's] version of the events." Brown v. City of Huntsville, 608 F.3d 724, 728 (11th Cir. 2010).[2] At approximately 6:30 PM on January 2, 2009, Officers Amanda Carmean and Brian Hopkins observed

---

[1]    The district court granted summary judgment to the other two defendants, Officer Hopkins and the City of Huntsville. They are not parties to this appeal.

[2]    "We review a grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party." Brown, 608 F.3d at 728 n.1. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A video camera in the officers' patrol car recorded the entire incident from a vantage point behind Hawkins's vehicle. The authenticity of this video is not in dispute. Because of the vantage point, Hawkins is obscured from view during most of the incident, and no relevant statements are audible. In such circumstances, we "accept the video's depiction instead of Plaintiff's account" to the extent (if any) that "the video obviously contradicts Plaintiff's version of the facts." Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1314 (11th Cir. 2010) (per curiam) (citing Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct 1769, 1776 (2007)).

Callie Hawkins driving with one tag light out.  The officers pulled behind Hawkins and activated their blue lights.  Hawkins applied her brakes, pulled into the left-hand turn lane, turned left, and continued driving.  Officer Carmean, who was driving, waited for traffic to pass before turning left to follow Hawkins.  Hawkins passed two side streets before turning right and finally pulling over, leaving the car in gear with her foot on the brake.

Hawkins grabbed her purse and put it in her lap, expecting the officers to ask for her driver's license.  Officer Carmean walked to Hawkins's front driver-side window, carrying a lightweight plastic flashlight, and remarked that it had appeared that Hawkins was not going to pull over.  Hawkins explained that she had been looking for somewhere to pull over.  She then asked why she had been pulled over.  Carmean responded by requesting Hawkins's license, registration, and proof of insurance.  Hawkins began to look through her purse.  She again asked why she had been pulled over, but she received no response.

Two to three seconds later, Carmean instructed Hawkins to get out of the car, opened the front driver-side door, and stood between Hawkins and the open car door.  She also, again, requested Hawkins's documents.  At no point during the encounter was Hawkins told that she was under arrest.

According to Hawkins, Carmean subsequently reached into her car, grabbed the front part of her hair, and yanked it.  Video from the officers' patrol car shows

3

Carmean reaching into Hawkins's car twenty-three seconds after she first opened the door. Hawkins asked Carmean what was wrong with her and whether she was crazy. Carmean then slapped Hawkins three to four times in the area of her face and shoulder. Hawkins attempted to block the slaps and pushed Carmean's hands away from her, making contact with Carmean in the process. Carmean then hit Hawkins with her flashlight two or three times, striking her chest. Hawkins swatted her hand in Carmean's direction in an attempt to defend herself.

Carmean then took Hawkins's driver's license, stepped back from the vehicle, and handed the license to Officer Hopkins. Next, Carmean took out her canister of oleoresin capsicum spray ("pepper spray") and shook it several times. Carmean never warned Hawkins that she was about to be sprayed. At some point, Hawkins asked Carmean if the situation involved a "racial issue" and screamed and yelled for help.

Carmean then sprayed Hawkins with pepper spray. Hawkins testified that the spray was effective, causing a burning sensation that made her cry and try to get it out of her eyes.[3] Hawkins reached to close the car door with her left hand, but Carmean prevented her from doing so. Carmean sprayed Hawkins at least two

---

[3] Carmean later testified that she thought she had missed Hawkins and that the spray had been ineffective.

4

more times before Officer Hopkins forcibly removed Hawkins from the vehicle.[4]

Hawkins was handcuffed, taken to jail, and charged with obstructing governmental operations, harassment, and resisting arrest.

## II.

Carmean argues that she did not use excessive force in violation of the Fourth Amendment and that, even if she did, she is entitled to qualified immunity. "[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Draper v. Reynolds, 369 F.3d 1270, 1277-78 (11th Cir. 2004) (alteration in original) (quoting Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002)).  We look to the "totality of the circumstances" and judge the use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).  In balancing the need for force against the arrestee's constitutional rights, we "must evaluate several factors, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Vinyard v. Wilson, 311

---

[4]    At one point during Hopkins's efforts to remove Hawkins from the vehicle, Hawkins's foot came off the brake, and the car lurched backwards.  Hopkins quickly reached into the car and put it in park.

5

F.3d 1340, 1347 (11th Cir. 2002) (quoting Graham, 490 U.S. at 396, 109 S. Ct. at 1872).  Even if an officer uses excessive force, she is entitled to qualified immunity if "an objectively reasonable officer in the same situation could have believed the use of force was not excessive."  Brown v. City of Huntsville, 608 F.3d 724, 738 (11th Cir. 2010).

We agree with the district court that Carmean failed to establish that she was entitled to summary judgment.  Viewing the record in the light most favorable to Hawkins, we conclude that all three of the factors bearing on the need for the use of force weigh in her favor.  Hawkins was stopped on suspicion of a minor, nonviolent crime, i.e., a tag light violation.  Carmean has not established that Hawkins was a threat to anyone's safety.[5]  Nor did Hawkins attempt to flee.

Carmean maintains that Hawkins exhibited noncompliance and resistance, which justified the use of force.  Carmean observes that, after she told Hawkins to exit the vehicle, Hawkins did not immediately comply.  Viewed in the light most favorable to Hawkins, this fact did not support a reasonable belief that Hawkins was resisting arrest or otherwise refusing to comply.  According to Hawkins, she was never told that she was under arrest.  When she was asked to produce her license, registration, and proof of insurance, she began to look through her purse.

---

[5]    For the first time on appeal, Carmean argues that Hawkins's car posed a safety threat. Specifically, Carmean asserts that Hawkins's engine was running and in gear throughout the relevant exchange and insinuates that Hawkins could have used the car as a deadly weapon.  We decline to address this argument made for the first time on appeal.

Seconds later, she was told to exit her vehicle and, again, to produce her documents.  Approximately twenty-three seconds later, Carmean reached into the car, yanked Hawkins's hair, slapped her, and hit her with a flashlight.[6]  Without knowing more about what transpired during those twenty-three seconds, we are required to draw reasonable inferences in Hawkins's favor.  The fact that Hawkins did not immediately exit the vehicle, without more, did not support a reasonable belief that she was noncompliant or resistant.

Carmean argues that when Hawkins pushed her hands away, swatted in her direction, and attempted to close the car door, she manifested intent to resist physically.  Viewing the record in the light most favorable to Hawkins, we disagree.  On Hawkins's account, Carmean's use of force was sudden, surprising, and unprovoked.  In those circumstances, Hawkins's actions did not support a reasonable belief that she would resist arrest.  We reiterate that Hawkins was never told that she was under arrest, nor was she verbally warned before being sprayed with pepper spray (although the video depicts Carmean shaking the canister in

---

[6]     Carmean argues that the hair yank and slaps constituted de minimis force, properly applied in an attempt to remove Hawkins from the vehicle.  See Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.").  We question whether this force bore a reasonable relationship to Carmean's stated purpose.  In any event, Carmean concedes that at least the flashlight strikes were not de minimis.

Hawkins's field of view).[7] We have said that "pepper spray is a very reasonable alternative to escalating a physical struggle with an arrestee," Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002), but when the record is viewed in Hawkins's favor, it does not support a reasonable belief that Carmean's alternative was a physical struggle.

We further note that, after Carmean had successfully prevented Hawkins from closing the car door, she sprayed Hawkins with pepper spray at least two more times. We assume, as we must, that Carmean's first use of pepper spray was visibly effective. We infer that Carmean sprayed Hawkins again after she was clearly subdued. This inference provides additional support for our conclusion.[8]

On the night of the traffic stop in January 2009, it was clearly established that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." Brown v. City of Huntsville, 608 F.3d 724, 738 (11th Cir. 2010) (quoting Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008)).[9]

---

[7]    We note that pepper spray may sometimes be used, without warning, to subdue someone suspected of a violent felony. McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1245 (11th Cir. 2003) (per curiam).

[8]    Cf. Oliver v. Fiorino, 586 F.3d 898, 907 (11th Cir. 2009) ("Quite simply, though the initial use of force (a single Taser shock) may have been justified, the repeated tasering of Oliver into and beyond his complete physical capitulation was grossly disproportionate to any threat posed and unreasonable under the circumstances.").

[9]    In Brown, we applied this principle to a use of force predating the one at issue in this case. See 608 F.3d at 739-740 ("Although the law permits some use of force in any arrest for even minor offenses, the law was clearly established in 2005 that Defendant Norris's combined

Viewing the record in the light most favorable to Hawkins, we conclude that any reasonable officer in Carmean's situation would have believed her use of force to be excessive. Carmean is, therefore, not entitled to qualified immunity at this stage.

## IV.

With respect to Hawkins's state-law claim, Carmean is entitled to state-agent immunity unless she acted "willfully, maliciously, fraudulently, in bad faith, beyond [her] legal authority, or under a mistaken interpretation of the law."[10] Brown v. City of Huntsville, 608 F.3d 724, 741 (11th Cir. 2010). We have already held that the record, when viewed in the light most favorable to Hawkins, supports a reasonable inference that Carmean acted "intentionally, gratuitously, and in violation of [Hawkins's] constitutional rights." Id. at 742. As in Brown, we conclude that the record likewise supports an inference that Carmean acted "willfully and in bad faith." Id. We consequently agree with the district court that Carmean has not demonstrated an entitlement to state-agent immunity under Alabama law.

**AFFIRMED.**

---

gratuitous use of pepper spray and other force against Brown in this minor offense context violated the Constitution.").

[10]    It is undisputed that, throughout the traffic stop, Hawkins was acting "within the scope of [her] discretionary function" as a police officer. Brown, 608 F.3d at 741.

9