[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16171
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cv-00872-TJC-JRK

ANTONIO L. BUCKMAN,

Plaintiff-Appellant,

versus

RONNIE MORRIS,
Sergeant,
BRANDON W. WOODS,
Sergeant,
J. OLIVEROS,
Correctional Officer,
K. PORR,
Sergeant,
J. ANDERSON,
Sergeant, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 13, 2018)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, and ANDERSON, Circuit
Judges.

PER CURIAM:

Antonio Buckman, a Florida prisoner, brought claims under 42 U.S.C.

§ 1983 against Ronnie Morris, Brandon Woods, Kenneth Porr, Jacob Anderson,

George Hanson, John McSpadden, and Jesse Oliveros.  Proceeding pro se, he

appeals the district court's grant of summary judgment in favor of the defendants,

contending that the court erred in relying on a video that Buckman says did not

obviously contradict his version of the events underlying his claims.

We review de novo the district court's grant of summary judgment, viewing

the evidence and all reasonable inferences in the light most favorable to Buckman,

the nonmoving party.  See Melton v. Abston, 841 F.3d 1207, 1219 (11th Cir.

2016).  Summary judgment is appropriate when there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  A court "consider[s] all evidence in the record when reviewing a

motion for summary judgment — pleadings, depositions, interrogatories,

2

affidavits, etc." Strickland v. Norfolk S. Ry., 692 F.3d 1151, 1154 (11th Cir. 2012).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007). For that reason, when an incident is recorded and the video "obviously contradicts" the plaintiff's version of events, courts will accept the video's depiction of the events as controlling. Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010); see also Morton v. Kirkwood, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]here an accurate video recording completely and clearly contradicts a party's testimony, that testimony becomes incredible."). But where the video does not clearly depict the events and there is evidence supporting both versions of events, we accept the plaintiff's version as controlling. Shaw v. City of Selma, 884 F.3d 1093, 1097 n.1 (11th Cir. 2018).

Assuming, as Buckman alleged, that he was lying unconscious on the floor when the defendants entered his cell, the video contradicts his allegations that he was unconscious when hit by an officer's cell extraction shield and that he did not

attempt to resist.  Although Buckman cannot be seen,[1] the video shows the officers struggling to restrain him and Woods can be seen and heard hitting him with the shield after the struggle began.  The video does not contradict Buckman's allegation that Woods intentionally hit him with the shield, but Buckman had a history of fighting, assaulting officers, possessing weapons, and disobeying orders. The defendants were also warned before entering his cell that he may have something in his left hand, which was underneath his body, so they reasonably could have believed that he may have had a weapon.  Under those circumstances a reasonable officer would have used the shield to force an aggressive and potentially armed inmate back onto the floor so that other officers could safely restrain him.  See Hammett v. Paulding County, 875 F.3d 1036, 1048 (11th Cir. 2017) (explaining that the reasonableness of the use of force is evaluated under an objective reasonableness standard, which considers the facts and circumstances of the case "from the perspective of a reasonable officer on the scene").

The video also contradicts Buckman's allegations that Woods and Morris repeatedly hit and kicked him and that Oliveros, Porr, and Anderson assaulted him. Although the situation escalated as the officers raised their voices and struggled to

---

[1] Buckman argues that we cannot rely on the video because it fails to provide an unobstructed view of him at times.  See Pourmoghani-Esfahani, 625 F.3d at 1315 ("[V]ideo is often not obviously contradictory because it fails to convey spoken words or tone and because it sometimes fails to provide an unobstructed view of the events.").  Although Buckman cannot be seen at times in the video as the officers are attempting to restrain him, the officers can be seen, and the video does not show them hitting or kicking Buckman.

restrain him, they were relatively calm throughout the incident, and the video showed only one punch — consistent with the "distractionary hammerfist" that Woods admitted in his declaration to using on Buckman's left shoulder.[2]  Both the shield hit and the hammerfist can be heard clearly.  Other than those two hits, the defendants were crouched over during the incident and did not make any movements that would have been made if they were hitting or kicking Buckman, and there were no other sounds of hitting or kicking.

The injuries documented by the video and the medical exams also blatantly contradict Buckman's allegations that the defendants repeatedly hit and kicked him.  The video shows that Buckman's mouth was bleeding but does not show any other injuries to his face or head.  The medical exam showed that he had three broken teeth and a laceration on his lower lip.  Those injuries were more consistent with a direct hit to the front of his mouth with the shield than repeated hits and kicks from multiple angles.  Along the same lines, the officers' only injuries were minor scrapes on Woods' right forearm and left wrist, which is inconsistent with Buckman's allegations that the officers repeatedly punched him.

Because the video obviously contradicts Buckman's version of events, the district court did not err in accepting the video's depiction as controlling.  <u>See</u>

---

[2] Woods described the hammerfist as a "technique [he] was taught during training which is meant to distract the resisting inmate so that [the inmate] can be restrained."

5

Scott, 550 U.S. at 380, 127 S. Ct. at 1776; Pourmoghani-Esfahani, 625 F.3d at 1315.  As a result, it did not err in granting summary judgment to the defendants.

**AFFIRMED.**