[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11201

Non-Argument Calendar

_____

CHRISTOPHER EUGEAN BROWN,

Plaintiff-Appellant.

*versus*

WARDEN,

Defendant,

SERGEANT ASHLEY KERN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:20-cv-00204-HL-TQL

_____

Before ROSENBAUM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Christopher Brown, a state prisoner proceeding *pro se*, filed a complaint alleging that, while he was incarcerated at Valdosta State Prison, prison officer Sergeant Ashley Kern used excessive force against him by deploying pepper spray into his cell after he refused to be handcuffed, and then displayed deliberate indifference to his medical needs by failing to ensure he received proper treatment. The district court granted summary judgment in favor of Kern, concluding that her use of pepper spray was reasonable given Brown's repeated refusal to "cuff up" when ordered by Kern, and that Kern was not deliberately indifferent since she took him to the showers as soon as he became compliant. After careful review, we affirm the grant of summary judgment.

**I.**

In the light most favorable to Brown, the relevant facts are as follows. Brown, who is serving a life sentence without parole for murder, was transferred to Valdosta in February 2019. He

refused his first housing assignment, requesting protective custody[1], and he was instead assigned to a "lockdown" unit. Brown explained that Valdosta was "the most violent prison" he had been in, and he feared being housed with a gang member, having been previously labeled as a "snitch." In his five months at Valdosta preceding the events in this case, Brown had two or three cellmates. None were affiliated with any gang, but one cellmate threatened Brown with a knife after Brown rejected his sexual advances. Brown informed a prison officer of this incident, and he was moved to another cell.

On July 26, 2019, Sergeant Kern and another prison officer came to Brown's cell and ordered him to "cuff up"—i.e., be handcuffed at the cell door—because he was getting a new cellmate. Brown refused, telling Kern that he had been trying to obtain protective custody and was "living in fear for [his] life," and that he did not feel safe with an unknown cellmate. Kern responded that housing assignments had "nothing to do with her," and she told Brown he would be pepper sprayed if he refused to be handcuffed. When Brown replied that he was "refusing," citing fears over his personal safety, Kern directed the other prison officer to start recording on her body-worn camera, and then gave another direct order to Brown to cuff up. Brown held firm and "still refused," trying to explain his need for protective custody. As a result, Kern deployed pepper spray through the flap on the cell door and closed the flap

---

[1] It appears Brown received protective custody sometime after the events of this case.

before again asking Brown to cuff up. Within two minutes, Brown "gave up" and submitted to handcuffing "because [he] couldn't take the spray no more."

Once Brown was in handcuffs, Kern and the other officer opened the cell door and escorted Brown to the showers, where he was permitted to wash while still in handcuffs. While showering, when Kern was away, Brown complained to the other officer that he was having vision problems. Thereafter, he was taken back to his cell, and his prospective cellmate was housed elsewhere. Brown continued to experience blurred vision after the pepper spray incident, but Kern did not have any role in his treatment apart from escorting him to medical appointments.

The district court granted summary judgment to Kern based on a report and recommendation prepared by a magistrate judge. In the court's view, no reasonable jury could conclude, based on Brown's version of events, that "Kern applied force maliciously and sadistically, rather than in a good-faith effort to restore order." The court also reasoned that Kern did not know about and was not deliberately indifferent to his vision problems. Brown appeals.

## II.

We review the grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party, Brown, and drawing all reasonable inferences in his favor. *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010). Because Brown is proceeding *pro se*, we liberally construe his filings. *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir. 2002).

Nevertheless, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## III.

The Eighth Amendment forbids prison officers using excessive force against prisoners. *Thomas v. Bryant*, 614 F.3d 1288, 1303–04 (11th Cir. 2010). The "core judicial inquiry" for an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotation marks omitted).

To determine whether force was applied maliciously and sadistically to cause harm, we consider the need for force, the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible official, and any efforts made to temper the severity of the use of force. *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *see Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Based on these factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Skrtich v. Thornton*, 280 F.3d 1295, 1300–01 (11th Cir. 2002), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). "Unless it appears that the evidence, viewed in the light most favorable to the

plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . , the case should not go to the jury." *Whitley*, 475 U.S. at 322.

We have recognized that "correctional officers in a prison setting can use pepper-spray or a takedown to subdue an inmate as long as a valid penological reason supports the use of such force." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020). "Pepper spray is an accepted non-lethal means of controlling unruly inmates," and prison officers "need not wait until disturbances reach dangerous proportions before responding." *Danley*, 540 F.3d at 1307. Nor are officers required to "convince every inmate that their orders are reasonable and well thought out." *Id.* In short, we must give "a wide range of deference to prison officials acting to preserve discipline and security." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019) (quotation marks omitted).

Here, the district court properly granted summary judgment on Brown's excessive-force claim. Undisputed evidence reflects that Sergeant Kern's use of pepper spray inside Brown's cell was supported by a "valid penological reason." *Sconiers*, 946 F.3d at 126. According to Brown's testimony, Kern shot a single burst of pepper spray and closed the door flap only after Brown refused multiple direct orders to be handcuffed, backed by warnings that he would be sprayed if he did not comply, so that another inmate could be added to his cell. Although Brown feared having a cellmate, he acknowledged that Kern's orders were valid and consistent with ordinary prison procedures, and that Kern herself had

no authority over housing assignments. Kern was not required to convince Brown that her orders were reasonable before acting to subdue him for being noncompliant and disruptive, *see Danley*, 540 F.3d at 1307, and we must give prison officials "wide ranging deference" when acting to preserve discipline and security, *see Sears*, 922 F.3d at 1205. Plus, immediately after Brown became compliant and submitted to being handcuffed, he was removed from the cell and taken to the showers to decontaminate.

Based on this record, no reasonable jury could conclude that Kern applied force maliciously and sadistically, rather than in a good-faith effort to maintain or restore discipline. *See Wilkins*, 559 U.S. at 37. And because Brown has not briefed his claim of deliberate indifference to his serious medical needs, he has abandoned any appeal of that ruling. *See Timson*, 518 F.3d at 874.

For these reasons, we affirm the district court's grant of summary judgment on Brown's complaint.

**AFFIRMED.**