[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11695

_____

D.C. Docket No. 3:16-cv-00855-CDL-DAB

MARY LEE DAVIS,
as administrator of the Estate of Fletcher Ray Stewart, deceased,

Plaintiff - Appellant,

versus

BRYAN EDWARDS,
JIMMY ABBETT,
Sheriff of Tallapoosa County, Alabama,
DAVID McMICHAEL,
Chief Deputy,
WILLIAM J. HOUGH,
Training Officer,
TALLAPOOSA COUNTY, ALABAMA, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(August 14, 2019)

Before ROSENBAUM, BRANCH and DUBINA, Circuit Judges.

PER CURIAM:

This is an appeal of the district court's order granting summary judgment in favor of Deputy Bryan Edwards of the Tallapoosa County, Alabama, Sheriff's Office and Officers Rico Hardnett and Christopher Fenn of the City of Dadeville Police Department (collectively, "the officers").[1]

The district court referred the summary judgment motion to a magistrate judge pursuant to 28 U.S.C. § 636 *et seq.*  The magistrate judge recommended that Hardnett and Fenn's motion be granted but that Edwards's motion be denied. Edwards objected to the denial of his motion for summary judgment, and the district court reviewed his objections *de novo*.  The district court then adopted the magistrate judge's recommendation that Hardnett and Fenn's motion for summary judgment be granted but rejected the magistrate judge's recommendation that Edwards's motion for summary judgment be denied.  The district court then entered summary judgment in favor of all three defendants as to all claims of Plaintiff Mary Lee Davis, as administrator of the Estate of Fletcher Ray Stewart, deceased.  Davis then perfected this appeal.

---

[1] The amended complaint included additional defendants, including Tallapoosa County, the City of Dadeville, and other individual defendants.  The district court dismissed those defendants, and no party appealed that order.  Thus, the three officers listed above were the only remaining defendants when the case proceeded to summary judgment.

## I.    BACKGROUND FACTS

This is a tragic case surrounding events which occurred near Dadeville, Alabama, on February 11, 2015, during which the officers were involved in the shooting death of local citizen Fletcher Ray Stewart ("Stewart"). Stewart was a 46-year-old lifelong resident of rural Tallapoosa County, Alabama. Stewart suffered from mild mental retardation and was known by both the residents of Dadeville and the members of local law enforcement.

On February 11, 2015, Stewart's nephew, Benny Welch, called 911 to report his uncle was wandering on the road "rasing [sic] all kind of Cain, and he's got a pistol in his pocket. . . . He showed it – you know, pulled it out when he walked by." (R. Doc. 109-9, p. 3.) The 911 operator dispatched Deputy Edwards, telling Edwards that Stewart was "walking up and down [Booger Hollow Road] hollering, [and] he has got a pistol that he is waving around." (R. Doc. 109-10, p. 2.) Edwards responded to the call and requested any available backup. Officers Hardnett and Fenn also responded to the call.

Edwards had encountered Stewart numerous times when responding to incidents in which Stewart was involved. During these encounters, Edwards had been able to diffuse any problem by merely talking to Stewart, or by giving him snacks or small change. However, on occasion, Edwards also had responded to

3

calls alleging violence by Stewart. In responding to these calls, Edwards had seen Stewart attack and threaten others, including police officers, with weapons such as a taser, bicycle chain, and large rock. (R. Doc. 164–1, p. 18–25.) In addition, the record shows that Edwards responded to a call that Stewart assaulted his own mother. (*Id.* at p. 18–20.) Edwards also knew that Stewart had at various prior times been in possession of a knife and brass knuckles. (*Id.* at p. 23, 25.) On this fatal day, as Edwards drove toward Stewart in response to the 911 call, Stewart ran into the woods. Edwards chased Stewart and commanded him to stop, which eventually he did. At that point, the other two officers had arrived at the scene with their guns drawn. Edwards shouted commands to Stewart, alternating between ordering him to keep his hands up and asking him where he had placed the gun. Instead of following either of Edwards's commands, Stewart moved his hands toward his back waistband, and Edwards opened fire. Two rounds struck Stewart, killing him. Importantly, the entire encounter was captured by Edwards's body camera, the footage of which is included as part of the record. *See* Def. Exh. 129, at 5. The parties, not surprisingly, dispute whether Edwards fired before or after Stewart removed his hand from his back waistband, apparently drawing his weapon.

We viewed the video several times, in slow motion, and we are unable to determine, conclusively, whether Edwards opened fire before or after Stewart

4

appeared to draw his weapon. What the video does show conclusively is that Edwards opens fire within a second of his bodycam capturing a frame that depicts Stewart holding a pistol-shaped object in his right hand (R. Doc. 109–17, p. 2.) Hardnett saw a pistol fly from Stewart's hands after the shooting started, but neither he nor Fenn saw a gun in Stewart's hands before the shooting. After the shooting, the officers discovered that Stewart had been holding a BB gun that resembled a real pistol. For purposes of the officers' motion for summary judgment, the district court assumed that Edwards did not see a gun before he fired his weapon the first time.

## II.    ISSUES

Davis alleges that the officers violated Stewart's Fourth Amendment rights by (1) conducting an unlawful investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968); (2) unlawfully seizing Stewart prior to the shooting and at the time of the shooting; and (3) using excessive force against Stewart when Edwards shot him. The question before us is whether the district court properly granted qualified immunity to the officers on the pre-shooting seizure claims and on the excessive use of force claim.[2]

---

[2] In her brief, Davis also argues that the district court improperly construed evidence and inferences in the officers' favor when deciding the summary judgment motion. Because there is nothing in the record to support that argument, we summarily reject it without further discussion.

5

### III.    STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment.  *Smith v. LePage*, 834 F.3d 1285, 1291 (11th Cir. 2016).  "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1318 (11th Cir. 2012) (quoting *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)).  If that standard is met, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quotation marks omitted).

To prevent summary judgment, a factual dispute must be both material and genuine.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510 (1986).  A fact is "material" if it "might affect the outcome" of the case.  *Furcron v. Mail Ctrs. Plus, LLC,* 843 F.3d 1295, 1303 (11th Cir. 2016) (quotation marks omitted).  And to raise a "genuine" dispute, the nonmoving party must point to enough evidence that "a reasonable jury could return a verdict for [her]."  *Id.* (quoting *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).

When considering the record on summary judgment "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her]

6

favor." *Tolan v. Cotton*, 572 U.S. 650, 651, 134 S. Ct. 1861, 1863 (2014). But in cases where a videotape in evidence "obviously contradicts [the nonmovant's] version of the facts, we accept the video's depiction instead of [the nonmovant's] account," *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010), and "view[] the facts in the light depicted by the videotape," *Scott v. Harris*, 550 U. S. 372, 381, 127 S. Ct. 1769, 1776 (2007).

## IV.    DISCUSSION

Qualified immunity protects officers engaged in discretionary functions from civil liability only if the officers' actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Here, no one disputes that the officers were exercising discretionary authority at the time of the alleged constitutional violations; thus, qualified immunity could attach to their actions. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005) (defendant officers were apprehending suicidal subject and were clearly engaged in a discretionary act); *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (no dispute that officer was engaged in discretionary duty while arresting plaintiff). Therefore, to prevail on her claim, the plaintiff must establish that the officers are not entitled to qualified immunity because the facts alleged demonstrate a violation

7

of Stewart's constitutional right that was clearly established at the time of Edwards's conduct. *See Mercado*, 407 F.3d at 1156.

We conduct a two-part inquiry to assess whether the plaintiff met this burden. First, we consider whether, taken in the light most favorable to the plaintiff, the facts alleged show the officers' conduct violated a constitutional right. *See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Then, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine whether the right was clearly established." *Id.* (quotation marks omitted).

## A. Pre-Shooting Seizure Claims

"[L]aw enforcement officers may seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting *Terry*, 392 U.S. at 19–20, 88 S. Ct. at 1878–79). The reasonable suspicion standard "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.* (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S. Ct. 673, 676 (2000)). Nonetheless, "the Fourth Amendment requires at least a minimal level of objective justification

8

for making [a] stop." *Id.* (quoting *Wardlow*, 528 U.S. at 123, 120 S. Ct. at 676). We consider the totality of the circumstances when determining whether reasonable suspicion existed and note that "[d]efensive behavior toward police is a relevant factor in this inquiry." *Id.* at 1186–87. When an officer asserts the defense of qualified immunity to a claim of an unconstitutional investigatory stop, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000). Thus, the relevant inquiry is whether the officers' seizure of Stewart prior to the shooting was supported by "arguable reasonable suspicion." *Id.* We agree with the district court that it was.

The record demonstrates that Deputy Edwards knew that Stewart engaged in aberrant behavior and that he knew Stewart was waving a gun on a public roadway. When Stewart saw Edwards approaching, Stewart ran into the woods on to someone else's property. Under the totality of the circumstances, Edwards had an arguable reasonable basis to suspect Stewart was engaged in criminal activity and posed a threat to any individuals in the vicinity. These circumstances authorized him to stop and question Stewart. Therefore, we agree with the district court's finding that Edwards is entitled to qualified immunity on Davis's pre-shooting seizure claims. Additionally, we conclude that Officers Hardnett and Fenn, who were simply providing backup for Deputy Edwards and were not

9

personally involved in the initial stop, are also entitled to qualified immunity on these claims.

### B. Excessive Force Claim

This claim presents a much closer question. The district court assumed for purposes of its summary judgment order that Edwards did not actually see Stewart holding a gun prior to discharging his weapon. This fact alone, however, is not dispositive of the claim. The record in this case demonstrates that Edwards knew Stewart to be mentally unbalanced, was reported to be armed, and was behaving in an erratic and potentially dangerous manner. The record also clearly demonstrates that upon seeing Edwards, Stewart fled. When Stewart stopped running, Edwards did not see a gun. Thus, Edwards reasonably could have concluded that the gun was concealed on Stewart's person.

The record also demonstrates that when Edwards ordered Stewart to show his hands and turn around, Stewart did not comply. Further, the videotape shows that when Edwards asked Stewart where the pistol was, Stewart did not respond; instead, Stewart reached his right hand behind his back into his waistband. At that point, Edwards pointed his weapon at Stewart and ordered him to show his hands. Rather than comply with this order, Stewart kept his right hand behind his back and refused to show his hands. On this record, where Edwards had significant personal knowledge of Stewart's history with violence, as well as of his mental

10

unpredictability, we agree with the district court's finding that at this point, whether Edwards saw the gun or not, he had probable cause to believe that Stewart posed a danger to himself and to the officers on the scene.

The relevant inquiry is whether it would have been clear to a reasonable officer that shooting Stewart under these circumstances would have been a violation of his Fourth Amendment right. Edwards was in a precarious position that necessitated an immediate decision. He was not required to wait any longer before using deadly force. *See Shaw v. City of Selma*, 884 F.3d 1093, 1100 (11th Cir. 2018) (explaining that under clearly established law, when a suspect does not comply with an officer's commands, the officer is not required to wait until the moment a suspect uses deadly force to stop the suspect); *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) ("[T]he law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." (quoting *Long v. Slaton*, 508 F.3d 576, 581 (11th Cir. 2007))); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1169 (11th Cir. 2009) ("[W]here orders to drop [a] weapon have gone unheeded, an officer is not required to wait until an armed and dangerous felon has drawn a bead on the officer or others before using deadly force." (quotation marks omitted)).

Notwithstanding the tragic nature of the shooting, we conclude that it would not have been clear to a reasonable officer that the shooting was unreasonable

11

under the circumstances. Edwards had to act quickly to subdue an unstable and potentially dangerous suspect. We do not view his actions with "the 20/20 vision of hindsight." *Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017) (quotation marks omitted). Thus, because we conclude from the record that Edwards's conduct did not violate Stewart's clearly established constitutional rights, Edwards is entitled to qualified immunity on plaintiff's Fourth Amendment excessive force claim. Moreover, Hardnett and Fenn, who issued no commands and fired no shots, are likewise entitled to qualified immunity on this claim.

## V.    CONCLUSION

This is indeed a tragic case, not only for the deceased and his family, but also for Deputy Edwards and the other officers involved. Nevertheless, based on the record, particularly the bodycam video, and based on the law of qualified immunity, we affirm the district court's grant of summary judgment to the officers.

AFFIRMED.